UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUNIL DANIEL,

    Plaintiff,

    v.

FIVE STARS LOYALTY, INC.,

    Defendant.

Case No. 15-cv-03546-WHO

**ORDER GRANTING MOTION TO DISMISS AND DENYING WITHOUT PREJUDICE MOTION TO STAY**

Re: Dkt. No. 28

## INTRODUCTION

Defendant Five Stars Loyalty, Inc. ("Five Stars"), a consumer rewards program that works with merchants to give consumers rewards points that can then be redeemed for free products or services, moves to dismiss plaintiff Sunil Daniel's First Amended Complaint ("FAC") that alleges a single cause of action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Daniel alleges that Five Stars sent him a text message that constituted a willful and knowing violation of the TCPA and seeks to represent a national class of persons who received advertising or telemarketing texts from Five Stars. But the FAC establishes that Daniel asked a restaurant cashier about the Five Stars program and provided the cashier with his telephone number. The text he then received was not an advertisement or telemarketing within the meaning of the TCPA, and by providing his telephone number Daniel gave his prior express consent to receive the text. Five Stars' motion to dismiss is GRANTED.[1]

## BACKGROUND

**I.    FACTUAL BACKGROUND**

I assume the truth of the allegations in the FAC for the purposes of the motion to dismiss. On April 16, 2015, Daniel had lunch at a Flame Broiler restaurant in North Hollywood. First Amended Complaint ¶ 19 ("FAC") (Dkt. No. 26). "Having noticed a Five Stars sign, upon

---

[1] In the alternative, Five Stars moves to stay the case pending resolution of the appeals in *Campbell-Ewald Co. v. Gomez*, 135 S. Ct. 2311 (2015), and *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015). That request is DENIED WITHOUT PREJUDICE.

purchase, [he] asked the cashier about Five Stars." *Id.* The cashier told him that, through Five Stars, customers earn points for food purchases, and that the points can then be redeemed for free food. *Id.*

The cashier asked for Daniel's telephone number, which Daniel provided orally. *Id.* The cashier then swiped a plastic card over a scanning device and handed the card to Daniel. *Id.* Within minutes, Daniel received a text message from Five Stars. *Id.* The message stated, "Welcome to Five Stars, the rewards program of Flame Broiler. Reply with your email to finish registering and get free pts! Txt STOP to unsubscribe." *Id.*

Daniel states that he was not told when he provided his telephone number that a text would be sent to him for any purpose, and that, "on information and belief, and based on the investigation of counsel, it is not necessary for consumers to reply to [the text he received], as the Five Stars card is operational upon receipt from the merchant." *Id.* ¶ 20. He alleges that the "clear purpose" of the text "is to encourage the customer to return and make additional purchases by expressly offering the enticement of free points . . . and to collect additional information (an email address), which furthers Five Stars' own marketing efforts, as well as the sales efforts of participating merchants." *Id.* ¶ 21. He also alleges that "if a response is sent to the text message, it is followed up with additional marketing messages . . . offering various incentives and discounts." *Id.*

## II. PROCEDURAL BACKGROUND

On June 23, 2015, approximately two months after his visit to Flame Broiler, Daniel filed this action in the Superior Court of California for the County of San Francisco. Notice of Removal, Ex. A (Dkt. No. 1). His complaint alleged a single TCPA cause of action under 47 U.S.C. § 227(b)(1) and identified a putative class defined as "[a]ll persons throughout the United States who, since October 16, 2013, received one or more text messages transmitted by Five Stars on their cellular telephones, and made for a marketing or advertising purpose." *Id.*

Five Stars removed the case to federal court on July 31, 2015, claiming subject matter jurisdiction on the basis of federal question jurisdiction and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Notice of Removal ¶ 5. After Five Stars filed an initial motion

to dismiss or, in the alternative, to stay the case, Daniel filed a notice of intent to amend as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B). Dkt. Nos. 19, 23. He filed the FAC on September 11, 2015. Dkt. No. 26.

The FAC brings the same single TCPA cause of action under 47 U.S.C. § 227(b)(1) as the original complaint and identifies the same putative class. *See* FAC ¶¶ 26, 33-38. Pursuant to 47 U.S.C. § 227(b)(3), the FAC seeks statutory damages in the amount of $500 per text message received, treble damages for willful and knowing violation of the TCPA, and injunctive relief. *Id.* ¶ 38. Five Stars filed the instant motion to dismiss or, in the alternative, to stay the case on October 2, 2015. Dkt. No. 28 ("Mot."). Pursuant to Civil Local Rule 7-1(b), I determined that the motion was suitable for disposition without oral argument and vacated the hearing set for November 18, 2015. Dkt. No. 43.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations omitted).

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). While a complaint "need not contain detailed factual allegations" to survive a Rule 12(b)(6) motion, "it must plead enough facts to state a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

In considering whether a claim satisfies this standard, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marines Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted). "[I]t is within [the court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

## DISCUSSION

Congress enacted the TCPA "to protect the privacy interests of telephone subscribers." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012) (in enacting the TCPA, Congress found that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy") (internal quotation marks omitted). The TCPA provision at issue here, 28 U.S.C. § 227(b)(1)(A)(iii), makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).[2]

Under the current version of the implementing regulation, which took effect on October 16, 2013, the level of prior consent required to remove a call from the scope of section 227(b)(1)(A)(iii) depends on the character of the call. Where the call "includes or introduces an advertisement or constitutes telemarketing," the called party must have given his "prior express *written* consent." 47 C.F.R. § 64.1200(a)(2) (emphasis added). With respect to other calls – i.e., calls that do not include or introduce an advertisement or constitute telemarketing – only "prior express consent" is required. 47 C.F.R. § 64.1200(a)(1). In other words, texts that "'includ[e] or introduc[e] an advertisement or constitut[e] telemarketing' . . . may only be sent with the recipient's prior express *written* consent, whereas other texts require only prior express consent to

---

[2] The Ninth Circuit has held that a text message qualifies as a "call" within the meaning of the TCPA. *See Satterfield*, 569 F.3d at 952-54.

be legal." *Reardon v. Uber Technologies, Inc.*, No. 14-cv-05678-JST, 2015 WL 4451209, at *3 (N.D. Cal. July 19, 2015) (emphasis in original).

The same implementing regulation defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

The parties do not dispute this basic framework. *See, e.g.,* FAC ¶ 36; Mot. at 9-10; Opp. at 18 n.15 (Dkt. No. 40) ("Generally speaking, plaintiff does not does not contest that a more relaxed standard [of prior consent] applies for non-advertisements and non-telemarketing."). Nor do they dispute that there is no indication in the FAC that Daniel gave his prior express *written* consent to receive the Five Stars text message. Their dispute turns on (1) whether the text, as alleged in the FAC, was a non-advertisement and non-telemarketing message, and (2) if so, whether Daniel has alleged that he gave his prior express consent to receive it.[3] I address each issue in turn.

## I.   ADVERTISEMENT OR TELEMARKETING

Five Stars argues that the text message Daniel received merely "provided information about how to complete registration per [his] request and does not constitute an advertisement or telemarketing." Reply at 2 (Dkt. No. 41). In support of this argument, Five Stars relies principally on *Aderhold v. Car2go N.A., LLC*, No. 13-cv-00489, 2014 WL 794802 (W.D. Wash. Feb. 27, 2014), which held that a text message similar to the one Daniel received did not constitute telemarketing under the TCPA. *See id.* at *9. The text at issue in *Car2Go* stated in whole, "Please enter your car2go activation code 145858 into the emailed link. We look forward to welcoming you to car2go." *Id.* *1. The plaintiff received the text within seconds of submitting an online registration form to car2go (a car-sharing service operating in Seattle, Washington and several other cities). *Id.* As part of the online registration form, the plaintiff entered his telephone number

---

[3] Five Stars also moves to dismiss on the ground that Daniels has not plausibly alleged that Five Stars used an "automatic telephone dialing system" to send the text. *See, e.g.,* Mot. at 7-9. Because I resolve the motion on the grounds stated in this Order, I do not address that argument.

and email address among other personal identifying information. *Id.* In dismissing the plaintiff's section 227(b)(1)(A)(iii) claim, the court rejected the argument that the text was telemarketing because it directed the plaintiff to place the activation code into the emailed link, which, in turn, connected to the car2go website, which, in turn, included marketing for car2go. *Id.* The court found that "[t]here is no indication that the text was intended for anything other than the limited purpose stated in its two sentences: to permit [plaintiff] to complete [his] registration . . . It is manifestly insufficient that [plaintiff] could, after choices of his own making, divert himself from the registration process to [view] car2go marketing." *Id.* at *9.

*Car2go* was decided under a prior version of 47 C.F.R. § 64.1200, and the opinion does not specifically refer to the regulation's definition of "telemarketing." Nevertheless, given that the applicable version of the regulation defined "telemarketing" in exactly the same way as the current version, the case is persuasive here, and I agree with its holding: a text sent solely for the purpose of allowing the recipient to complete a registration process that he or she initiated shortly before receiving the text is not telemarketing within the meaning of 47 C.F.R. § 64.1200(f)(12).[4]

Daniel makes two counterarguments, neither of which is convincing. First, he emphasizes that "[w]hether a message qualifies as an advertisement or telemarketing cannot be determined from its face alone;" rather, "the FCC requires courts to look at the context in which the message is sent . . . to figure out what its purpose is." Opp. at 18. He points to *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012), in which the Ninth Circuit indicated that the characterization of a call for the purposes of the TCPA should be "approach[ed] with a measure of common sense." *Id.* at 918. According to Daniel, considering the context in which his text was sent and applying common sense, "a reasonable inference is that the message [was] designed to encourage future purchases at Flame Broiler." Opp. at 20.

---

[4] Daniel focuses his briefing on whether the text he received constituted "telemarketing" under 47 C.F.R. § 64.1200(f)(12), and it is unclear whether he means to allege that the text also included or introduced an "advertisement" within the meaning of 47 C.F.R. § 64.1200(f)(1). To the extent that he does base his TCPA claim on this theory, the claim fails. I do not see how the text could be reasonably characterized as including or introducing "material advertising the commercial availability or quality of any property, goods, or services," 47 C.F.R. § 64.1200(f)(1), and Daniel does not even attempt to explain how it could be.

6

Context and common sense do not help Daniel: both cut squarely against his position. The context in which the text message was sent – i.e., minutes after Daniel asked the Flame Broiler cashier about Five Stars and gave the cashier his telephone number – merely highlights the text's purpose of enabling Daniel to complete the registration process that he had initiated minutes before. Likewise, common sense points to the conclusion that Daniel received a confirmatory text as part of the process of registering for Five Stars, not a telemarketing message. To the extent that it could be reasonably inferred based on context or otherwise that the text's purpose was also to "encourage future purchases at Flame Broiler," that purpose is simply too attenuated to make the text telemarketing within the meaning of 47 C.F.R. § 64.1200(f)(12). Certainly, the text was designed to allow Daniel to complete the registration process, which could result in an increase in the chances of Daniel making future purchases at Flame Broiler or other participants in the Five Stars program. But Daniel cites no authority indicating that this degree of connection between communication and purchase is sufficient to transform a text of the sort he received into a telemarketing message.

Daniel relies heavily on *Chesbro* for his context and common sense argument, but the facts of that case are substantially different from those at issue here. There, the plaintiff purchased a computer from Best Buy and signed up for a payment plan, in the process providing his telephone number. 705 F.3d at 915. The parties disputed whether at the same time the plaintiff also enrolled in the "Reward Zone Program," which allowed customers to earn coupons that could be applied to future purchases at Best Buy. *Id.* at 915-16. Over the course of the next approximately one year, the plaintiff received several automated calls from Best Buy regarding the Reward Zone Program, despite his repeated requests that he not be called. *Id.* at 916, 918. One of the calls consisted of the following script:

> Hello, this is Andrea from Best Buy Reward Zone calling for (Recipient's first and last name) to remind you that your Reward Certificates are about to expire. (Certificate amount) dollars in Reward Certificates were mailed to you on (Mail date) and they will expire if not used by (Expiration Date). If you do not have your reward certificates, you can re-print them online at myrewardzone.com. Thank you for shopping at Best Buy.

7

*Id.* at 916. The Ninth Circuit "approach[ed] the problem with a measure of common sense" and concluded that the automated calls constituted telemarketing, highlighting that the calls

> urged the listener to "redeem" his Reward Zone points, directed him to a website where he could further engage with the [Reward Zone Program], and thanked him for 'shopping at Best Buy.' Redeeming Reward Zone points required going to a Best Buy store and making further purchases of Best Buy's goods. There was no other use for the Reward Zone points.

*Id.* at 918. The Ninth Circuit recognized that the calls did not explicitly reference any specific product or service but found that their "implication is clear from the context," and that "any additional information provided in the calls does not inoculate them" against liability under the TCPA. *Id.*

In contrast with the plaintiff in *Chesbro*, Daniel received a single text message in direct and immediate response to his inquiry regarding the Five Stars program and to his provision of his telephone number. The message he received did not urge him to "redeem" Five Stars points, did not direct him to a location where points could be redeemed or where more information about the Five Stars program could be obtained, and did not reference shopping or purchasing. Apart from the presence of rewards points and the absence of any express reference to a specific product or service, Daniel does not identify any similarities between *Chesbro* and this case. While the common sense inference in *Chesbro* was that the calls constituted telemarketing, that is not the case here.

Daniel's second argument focuses on the mention of "free pts" in the second sentence of the text he received. *See* Opp. at 18. He argues that because these "free pts" are "obviously meant to be redeemed" at Flame Broiler, the text "on its face" encourages the purchase of a product. *Id.* This argument fails because it runs smack into Daniel's first argument, i.e., that a message must be considered in context, not in a vacuum. While in certain circumstances a similar reference to rewards points might be enough to justify characterizing a message as an advertisement or telemarketing, it is not enough here: the message Daniel received did not urge him, either expressly or impliedly, to redeem any Five Stars points, nor did it direct him to a location where points could be redeemed or where more information about the Five Stars program could be

8

obtained. Rather, as alleged in the FAC, the reference to "free pts" could be reasonably understood to mean either (1) that Daniel would earn points specifically by replying with his email and/or by completing the registration process, or (2) that joining the Five Stars program would as a general matter enable him to earn points. Under either of these readings, the mention of "free pts" is merely a brief reference to a basic consequence of Daniel replying with his email or of registering for and/or participating in the Five Stars program. Given the context of the message, that brief reference does not rise to the level of encouraging the purchase of goods or services. Nor does it threaten the sort of "intrusive invasion of privacy" that Congress contemplated in enacting the TCPA. *Mims*, 132 S. Ct. at 745. The text Daniel received did not include or introduce an advertisement and did not constitute telemarketing.[5]

## II.   PRIOR EXPRESS CONSENT

Because the text Daniel received did not include or introduce an advertisement or constitute telemarketing, it "require[d] only prior express consent to be legal." *Reardon*, 2015 WL 4451209, at *3. I agree with Five Stars that the allegations in the FAC establish that Daniel gave his prior express consent to receive the text.

While there is a minority of courts that have found otherwise, the great weight of authority holds that an individual who knowingly provides her telephone number to another party without limiting instructions has giving her prior express consent to receive calls at that number from that party. In its 1992 order interpreting the TCPA, the FCC observed that

> persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.

---

[5] Although Daniel alleges in the FAC that "it is not necessary for consumers to reply to [the text he received], as the Five Stars card is operational upon receipt from the merchant," and that "if a response is sent to the text message, it is followed up with additional marketing messages . . . offering various incentives and discounts," FAC ¶ 20, he does not explain either in the FAC or in his opposition brief how these allegations help his case. On their face, they do not. In light of the absence of any explanation of their relevance, they do not change the advertisement/telemarketing analysis set out above.

7 F.C.C. Rcd. 8752 ¶ 31 (1992) (internal footnotes omitted).[6,7] In line with this order, "the vast majority of cases to address the issue have held that a telephone customer who provides her number to another party consents to receive calls or texts from that party." *Reardon*, 2015 WL 4451209, at *6 (collecting cases); *see also Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1102-03 (C.D. Cal. 2014) ("Myriad federal district courts have relied on the [FCC's 1992 order] to conclude that plaintiffs who provided a business with their telephone number and then received a text message from the business had no claim under the [TCPA].") (collecting cases); *Roberts*, 2015 WL 6524840, at *1 (holding that, under the FCC's 1992 order, the plaintiff "expressly consented to text messages from [defendant] when he provided [defendant] his cell phone number"); *but see, e.g., In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1258 (S.D. Cal. 2012).

Further, in its 2015 order interpreting the TCPA, the FCC again explained that prior express consent exists where the recipient provides her telephone number without limiting instructions. It stated: "For non-telemarketing and non-advertising calls, express consent can be demonstrated by the called party giving prior express oral or written consent or, in the absence of instructions to the contrary, by giving his or her wireless number to the person initiating the autodialed or prerecorded call." 30 F.C.C. Rcd. 7961 ¶ 52 (2015) (internal footnotes omitted).

---

[6] Under the Hobbs Act, I am bound by an FCC final order unless it is invalidated by a court of appeals. *See* 28 U.S.C. § 2342(1); *see also US W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000); *Leckler v. Cashcall, Inc.*, No. 07-cv-04002-SI, 2008 WL 5000528, at *2-3 (N.D. Cal. Nov. 21, 2008). The FCC's 1992 order, as well as its 2015 order discussed below, are final orders within the meaning of the Hobbs Act. *See Reardon*, 2015 WL 4451209, at *6; *Roberts v. Paypal, Inc.*, No. 13-16304, 2015 WL 6524840, at *1 (9th Cir. Oct. 29, 2015); *see also US W. Commc'ns*, 224 F.3d at 1054 (9th Cir. 2000) ("[A]gency orders are 'final orders' for the purposes of the Hobbs Act if they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process") (some internal quotation marks omitted).

[7] Five Stars' unopposed request for judicial notice of the FCC's 1992 and 2015 orders and two other orders issued by the FCC, Dkt. No. 30, is GRANTED.

Daniel cites no authority to the contrary (although, as noted above, there is some), and, indeed, offers no argument whatsoever in his opposition brief regarding prior express consent.[8] Five Stars has shown that, as alleged in the FAC, the text it sent to Daniel was a non-advertisement and non-telemarketing message sent with the prior express consent of the recipient. Accordingly, the TCPA cause of action must be dismissed.

## CONCLUSION

Five Stars' motion to dismiss is GRANTED. Daniel shall file his second amended complaint, if any, within 25 days of the date of this Order. Five Stars' motion to stay is DENIED WITHOUT PREJUDICE to resubmission upon the filing of Daniel's second amended complaint.

**IT IS SO ORDERED**.

Dated: November 24, 2015

WILLIAM H. ORRICK
United States District Judge

---

[8] Daniel does dispute Five Stars' alternative arguments that it possessed a "good faith belief" of prior express consent, and that its alleged misconduct is shielded from liability under the exception, set out in the FCC's 2015 order, for "a one-time text sent in response to a consumer's request for information." 30 F.C.C. Rcd. 7961 ¶ 106. However, because I find that Daniel's allegations establish that he gave his prior express consent to receive the text, I do not address those arguments.